# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **RICARDO GONZALES GARCIA, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. NO.: 4:18-CV-4256** |
| | § | |
| **T. RICHARD MORRIS,** | § | |
| **THOMAS P. CUNNINGHAM,** | § | |
| **CHRISTIAN P. CUNNINGHAM,** | § | |
| **INTERNATIONAL CONSTRUCTION** | § | |
| **EQUIPMENT, INC.** | § | |
| | § | |
| **Defendants.** | § | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*/s/ William R. Stukenberg*

William R. Stukenberg
Texas Bar No. 24051397
S.D. Texas Bar No. 55792
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone:     (713) 650-0404
Facsimile:      (713) 650-0405
Email:william.stukenberg@jacksonlewis.com

Mehronissa Modgil
Texas State Bar No. 24092846
Mehronissa.modgil@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas  75201
Telephone:  (214) 520-2400
Fax:  (214) 520-2008

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ................................................................... 1

II.   SUMMARY JUDGMENT EVIDENCE ........................................................... 2

III.  FACTUAL BACKGROUND ........................................................................... 2

      A.   Garcia's employment as a sales manager for ICE. ................................................2

      B.   Garcia's performance declines from 2014 to 2015. ..............................................3

      C.   Garcia's performance rapidly declines through the first half of
           2016. .....................................................................................................................4

      D.   Garcia's alleged sustains an injury to his arm and elbow, and
           undergoes surgery. ...............................................................................................4

      E.   Despite the injury and surgery, Garcia continues working full-time. ......................5

      F.   Garcia undergoes elbow surgery and begins attending physical
           therapy once a week. ............................................................................................6

      G.   Despite the elbow surgery and physical therapy, Garcia continues
           working full-time through the end of the year. ......................................................6

      H.   Upon reviewing Garcia's 2016 performance, Cunningham makes
           the decision to terminate, due to his inadequate performance. ..............................7

IV.   SUMMARY JUDGMENT STANDARD OF REVIEW ...................................... 8

V.    ARGUMENT AND AUTHORITIES ............................................................... 8

      A.   Garcia's disability discrimination claim is without merit and
           should be dismissed. ............................................................................................8

           1.   The legal standard for disability discrimination claims. .............................8

           2.   Garcia cannot establish a *prima facie* case of disability
                discrimination. ..........................................................................................9

           3.   Even if Garcia could establish a *prima facie* case, he was
                terminated for a legitimate non-discriminatory reason. ............................13

           4.   Garcia cannot show his performance issues were a
                pretextual reason for his termination. .......................................................14

B.      Garcia failed to exhaust administrative remedies because his lawsuit is distinct from his charge of discrimination. ............................................14

C.      The Individual Defendants should be dismissed because they are not "employers" under the ADA.............................................................................15

VI.    CONCLUSION AND PRAYER FOR RELIEF.................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. City of Dallas*,
    997 F.2d 62 (5th Cir. 1993) ......................................................................8

*Capozzelli v. All-State Ins. Co.*,
    Civ. Action No. 2:13-CV-00260-JRG, 2014 U.S. Dist. LEXIS 23270 (E.D.
    Tex. Feb. 24, 2014) ...............................................................................15

*Carroll v. Sanderson Farms, Inc.*,
    2012 U.S. Dist LEXIS 125792 (S.D. Tex. Sept. 5, 2012) ......................................8

*Dees v. United Rentals North America, Inc.*,
    505 F. App'x 302 (5th Cir. 2013) ...............................................................14

*EEOC v. Chevron Phillips Chem. Co.*,
    570 F.3d 606 (5th Cir. 2009) ....................................................................10

*Fierro v. Knight Transp.*,
    No. EP-12-CV-00218-DCG, 2012 U.S. Dist. LEXIS 133249
    (W.D. Tex. Sep. 18, 2012) ...................................................................9, 10

*Gowesky v. Singing River Hops. Sys.*,
    321 F.3d 503 (5th Cir. 2003) .....................................................................9

*Hernandez v. Yellow Transp., Inc.*,
    670 F.3d 644 (5th Cir. 2012) ....................................................................13

*Herrington v. Univ. of Texas*,
    2010 U.S. Dist. LEXIS 124546 (S.D. Tex. Nov. 24, 2010).....................................9

*Lawrence v. Univ. of Tex. Med. Branch at Galveston*,
    163 F.3d 309 (5th Cir. 1999) ....................................................................14

*Laxton v. Gap, Inc.*,
    333 F.3d 572 (5th Cir. 2003) ....................................................................14

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994) .....................................................................8

*Little v. Republic Refining Co., Ltd.*,
    924 F.2d 93 (5th Cir. 1991) .....................................................................13

*Lopez v. Kempthorne*,
    684 F. Supp. 2d 827 (S.D. Tex. 2010) ........................................................................12

*McLennan v. Oncor Elec. Delivery Co. LLC*,
    Civil Action No. 3:12-CV-00531-G (BF), 2012 U.S. Dist. LEXIS 105858
    (N.D. Tex. 2012) ........................................................................................................15

*Moore v. Reeves County*,
    360 F. App'x 546 (5th Cir. Jan. 11, 2010) ................................................................14

*Nieto v. L & H Packing Co.*,
    108 F.3d 621 (5th Cir. 1997) ....................................................................................12

*Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*,
    245 F.3d 507 (5th Cir. 2001) ....................................................................................12

*Price v. Federal Express Corp.*,
    283 F.3d 715 (5th Cir. 2002) ....................................................................................14

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ................................................................................................8, 9

*Salley v. Johnson Controls, Inc.*,
    No. 00-1343, 2001 U.S. Dist. LEXIS 26979 (W.D. La. Nov. 26, 2001) ...................13

*Seshadri v. Kasraian*,
    130 F.3d 798 (7th Cir. 1997) ......................................................................................8

*Smith v. Wal-Mart Stores*,
    891 F.2d 1117 (5th Cir. 1990) ..................................................................................13

*St. Mary's Honor Ctr. v. Hicks*,
    509 U.S. 502 (1993) ....................................................................................................9

*Tex. Dep't of Cmty. Affairs v. Burdine*,
    450 U.S 248 (1981) ......................................................................................................9

*Toronka v. Cont'l Airlines, Inc.*,
    No. 10-20540, 411 F. App'x 719 (5th Cir. 2011) ....................................................10

*White v. Omega Protein Corp.*,
    390 F.Supp.2d 604 (S.D. Tex. 2005) ..........................................................................8

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants T. Richard Morris, Thomas P. Cunningham, Christian P. Cunningham, and International Construction Equipment, Inc. ("ICE"), (collectively the "Defendants") file this Motion for Summary Judgment, requesting that the Court grant complete summary judgment on Plaintiff Ricardo Garcia's ("Garcia" or "Plaintiff") disability discrimination claim.

## I.        SUMMARY OF THE ARGUMENT

Garcia was a former sales manager for ICE who was terminated for poor performance. Specifically, by July 31, 2016, Garcia had achieved 8% of his 2016 annual quota.  On August 3, 2016, Garcia sustained an injury to his left arm, but admits that his injury did not hamper his ability to perform the essential functions of his position.  As such, Garcia worked consistently (if not better) through the end of the year.  On January 5, 2017, ICE discharged Garcia because he achieved only 17% of his quota for the year.

Garcia claims ICE terminated his employment due to his injury, which he alleges is now a permanent disability.  ICE is entitled to summary judgment on Garcia's claim of discrimination under the Americans with Disabilities Act ("ADA") on several independent grounds:

First, Garcia cannot establish a *prima facie* case of disability discrimination, because he cannot establish that he is disabled under the ADA, that his employer knew about his disability, that his termination was on account of his disability, and cannot identify any non-disabled employees who ICE treated better than him.  Instead, Garcia admits that ICE targets all sales managers for not meeting sales quotas, regardless of their disability status.

Second, even if Garcia could prove a *prima facie* case of discrimination, ICE has articulated a legitimate, non-discriminatory reason for Plaintiff's termination.  Last, Garcia has no actionable evidence that could support a finding that ICE's actions with respect to his

employment were a pretext for unlawful disability discrimination.  Instead, he relies on speculation that fails to raise an issue of fact.

Also, Garcia failed to exhaust administrative remedies because his Charge of Discrimination and Original Petition asserts distinct claims and contradicting facts.

Finally, the Individual Defendants should be dismissed because they are not "employers" as defined by the ADA, which is a necessary element to maintain an ADA claim.

Based on the facts, Garcia offers nothing but speculation and conclusory allegations in support of his claims.  The Court, consequently, should dismiss Garcia's ADA claim.

## II.　　SUMMARY JUDGMENT EVIDENCE

In support of their Motion for Summary Judgment, Defendants offer the following evidence filed herewith:

- Exhibit A:  Declaration of Christian Cunningham

    o  Exhibit A-1:  Copy of Garcia's 2014 Sales Report

    o  Exhibit A-2:  Copy of Garcia's 2015 Sales Report

    o  Exhibit A-3:  Copy of Garcia's 2016 Sales Report

- Exhibit B:  Excerpts from the Deposition of Ricardo Garcia

- Exhibit C:  Copies of Garcia's Texas Workers' Compensation Status Reports

- Exhibit D:  Copy of Garcia's Charge of Discrimination

## III.　　FACTUAL BACKGROUND

### A.　　Garcia's employment as a sales manager for ICE.

Founded in 1974, ICE manufactures and markets pile driving and drilling equipment. (Cunn. Decl. ¶ 3.)  Garcia began his full-time employment with ICE in 2007 as a Territory Sales Manager/Sales Representative ("sales manager"), assigned to the South Central region, which

includes Texas, New Mexico, Oklahoma, and Mexico.  (Cunn. Decl. ¶ 4; Garcia Dep. at 13:15-23, 16:20-25, 17:4-7).

As a sales manager, Garcia was responsible for growing the market by selling and renting ICE's equipment to companies within his designated territory.  (Cunn. Decl. ¶ 4; Garcia Dep. at 24:11-15).  ICE does not require (or encourage) its sales managers to perform repairs in the field, handle equipment, or to lift items to do repair work. (Cunn. Decl. ¶ 7; Plaintiff's Original Petition, ¶ 23; Garcia Dep. at 29:8-11).  As the title suggest, the sales managers are expected to sell – that is the job.  (Cunn. Decl. ¶ 4-6).

Though ICE has a Houston office, ICE permitted Garcia to work from home.  (Cunn. Decl. ¶ 6; Garcia Dep. at 24:16-17, 24-25).  Garcia did not have any set work schedule. (Cunn. Decl. ¶ 6; Garcia Dep. 25:1-2).  He set his own hours, with the expectation that he sell.  (Cunn. Decl. ¶ 6; Garcia Dep. 25:1-2).

Kevin Kane, National Sales Manager, supervised Garcia.  (Cunn. Decl. ¶ 8; Garcia Dep. 35:7-9).   At the beginning of each year, sales managers are provided a sales quota by Kane and Christian Cunningham, ICE's Chief Executive Officer. (Cunn. Decl. ¶ 5; Garcia Dep. at 21:5-13, 38:15-18, 39:1-5).  ICE requires all sales managers to achieve (or make a genuine attempt to achieve) their sales quota.  (Cunn. Decl. ¶ 5; Garcia Dep. at 21:5-13, 40:10-14, 211:13-22).  Cunningham oversees the performance of the sales team by reviewing sales reports which reflect each sales managers' total generated revenue.  (Cunn. Decl. ¶ 8).

**B.**    **Garcia's performance declines from 2014 to 2015.**

For 2014, Garcia was expected to generate at least $1,058,000 in total revenue for the year.  (Cunn. Decl. ¶ 9; Ex. A-1; Garcia Dep. at 34:5-7, 40:15-17).  Garcia generated $1,403,980 in revenue for 2014, averaging approximately $116,998 per month.  (Exhibit A-1).

For 2015, Garcia was expected to generate at least $1,307,000 in total revenue for the year.  (Cunn. Decl. ¶ 10; Ex. A-2; Garcia Dep. at 52:11-13).  Garcia generated only $988,139 in revenue for 2015, that is, $318,861 short of his 2015 quota.  (Cunn. Decl. ¶ 10; Ex. A-2; Garcia Dep. at 53:8-12).  Garcia averaged approximately $82,345 in revenue per month for 2015.  (Ex. A-2).  At the end of 2015, Garcia acknowledged that his sales numbers were low, and that he needed to increase his performance.  (Garcia Dep. at 56:1-8).  Cunningham warned Garcia that if his sales did not improve, he could be subject to disciplinary action, up to termination.  (Cunn. Decl. ¶ 10).

## C. **Garcia's performance rapidly declines through the first half of 2016.**

In 2016, Garcia's sales fell off a cliff.  (Exhibit A-3).  In January 2016, Cunningham and Kane notified Garcia of the $2,500,000 quota for the year.  (Cunn. Decl. ¶ 12; Ex. A-3; Garcia Dep. at 57:2-5, 59:17-24).  All other sales managers received a similar sales quota.  (Cunn. Decl. ¶ 12).  From January 2016 to July 2016, Garcia generated $194,677 in revenue (less than 8% of his quota) with an average of $27,811 generated per month, by far his lowest level of productivity during his entire tenure and woefully below his quota.  (Cunn. Decl. ¶ 12; Ex. A-3; Garcia Dep. at 60:8-25, 61:1-4).  Garcia acknowledged that his performance for the first half of 2016 was inadequate.  (Garcia Dep. at 62:2-4).

## D. **Garcia's alleged sustains an injury to his arm and elbow, and undergoes surgery.**

Garcia claims that, on August 3, 2016, while transporting equipment from a client site, he slipped and fell from the bed of his truck and landed on his left elbow.  (Garcia Dep. at 67:9-25).  Garcia, who is right-handed, drove himself to the hospital and underwent a CAT scan confirming his arm fracture.  (Garcia Dep. 71:4-12, 72:15-16, 21-25, 73:3-4).  Garcia informed Kane of his injury and need for surgery.  (Garcia Dep. at 74:13-18, 75:2-14).  Kane responded with support

and told Garcia to take care of himself.   (Garcia Dep. at 75:12-16, 76:2-3).   Garcia was then admitted into surgery for his arm.   (Garcia Dep. at 73:3-4).

Dr. Victor Phan, Garcia's physician, performed the surgery to Garcia's arm.   (Garcia Dep. at 78:6-8).   Dr. Phan confirmed that Garcia had also dislocated his elbow, and referred Garcia to Dr. Gerard Gabel.   (Garcia Dep. at 79:24-25, 82:1-3).   On August 4, 2016, Garcia provided Kane with an update on surgery and notified him of his elbow injury.   (Garcia Dep. at 84:2-6).   Garcia did not contact anyone else from ICE, and did not request any time off from work or any other accommodation – he just had a broken arm and a dislocated elbow.   (Garcia Dep. at, 75:20-22, 76:6-7, 84:11-12).

**E.** **Despite the injury and surgery, Garcia continues working full-time.**

A few days after the surgery, Garcia contacted Kane again to inform him that he would not be able to do any "service work" until his arm healed.   (Garcia Dep. at 84:22-25, 85:1-10).   Shortly after surgery, Garcia filed a workers' compensation claim.   (Garcia Dep. at 86:8-18).   On August 15, 2016, Dr. Gabel completed a Texas Workers' Compensation ("TWC") Status Report, recommending that Garcia not return to work.   (Ex. C, page 1; Garcia Dep. at 89:7-14).   However, because Garcia's position allows him to work remotely and does not require any "service work," he continued to work full-time and did not request any accommodations. (Garcia Dep. at 87:17-21, 89:21-25, 90:5-18).

On August 17, 2016, Dr. Gabel cleared Garcia to return to work, with the restriction that he not use his left arm.   (Ex. C, page 2; Garcia Dep. at 100:2-10).   Garcia continued to work remotely, full-time, with no accommodation, because having an injured arm did not impact his job, which again was to sell the equipment. (Garcia Dep. at 101:8-18).

**F.**     **Garcia undergoes elbow surgery and begins attending physical therapy once a week.**

On August 23, 2016, Dr. Gabel performed surgery on Garcia's elbow.  (Ex C, page 3; Garcia Dep. 102:1-10).  After elbow surgery, Garcia began attending one-hour physical therapy sessions near his home, once a week.  (Garcia Dep. at 92:18-20-25, 115:19-23).

**G.**     **Despite the elbow surgery and physical therapy, Garcia continues working full-time through the end of the year.**

The August 23 elbow surgery did not hamper Garcia's ability to perform in his role, so he continued working full-time.  (Garcia Dep. at 106:18-23, 107:1-1-6; 114:9-11).  As a result, Garcia generated $28,824 in total revenue for August, and $28,257 of total revenue for September, which are both greater than the $27,811 per month average he generated prior to injuring his arm.  (Ex. A-3; Garcia Dep. at 89:21-25, 90:5-18, 91:7-14, 119:21-23, 120:24-25; 121:1-25, 122:1).

On September 23, 2016, Dr. Gabel completed a TWC Status Report, recommending Garcia return to work with the restriction that he not use his left hand. (Ex. C, page 4; Garcia Dep. at 118:23-25, 119:1-2).  Garcia continued to work full-time, because an injured arm did not prevent him from engaging in sales, and he generated $34,785 of revenue for October, which is more than the $27,811 per month average he generated prior to his injury.  (Ex. A-3; Garcia Dep. at 132:14-17).

On October 20 2016, Dr. Gabel completed a TWC Status Report, recommending Garcia return to work with the restriction that he not use his left hand. (Ex. C, page 5; Garcia Dep. at 124:2-14).  Again, Garcia continued to work full-time and generated $149,297 of revenue for November, which is significantly higher which than the $27,811 per month average generated he generated prior to his injury.  (Ex. A-3; Garcia Dep. at 141:13-17).

On November 28, 2016, Dr. Gabel completed a TWC Status Report, recommending

Garcia return to work with the restriction that he not use his left hand. (Ex. C, page 6; Garcia Dep. at 124:2-14). Garcia continued to work full-time, but generated only $8,831 of revenue for December, showing that he had made no effort to achieve his quota. (Cunn. Decl. ¶ 13; Ex. A-3; Garcia Dep. at 148:13-17).

On December 27, 2016, Dr. Gabel completed a TWC Status Report, recommending a full release back to work, with no restrictions. (Ex. C, page 7; Garcia Dep. at 143:10-14, 144:4-15). Dr. Gabel stated that Garcia's humerus fracture would not be a concern in the future. (Ex. C, page 8; Garcia Dep. at 143:15-25, 144:1-3). The notes do not mention a lifting limitation. (Ex. C, page 8; Garcia Dep. at 143:15-25, 144:1-3).

Garcia did not request any form of leave to recover from his injuries or attend physical therapy appointments. (Garcia Dep. 88:10-12, 107:23-25, 108:1-8). Garcia did not file for short-term disability benefits. (Garcia Dep. at 89:13-14). Garcia remained on ICE's payroll during the entire year of 2016 and worked throughout. (Garcia Dep. at 88:16-22).

## H.   Upon reviewing Garcia's 2016 performance, Cunningham makes the decision to terminate, due to his inadequate performance.

By the end of 2016, Garcia had generated only $436,249 of total revenue – a fraction of his historical sales and woefully below his quota. (Cunn. Decl. ¶ 13; Ex. A-3; Garcia Dep. at 56:23-25, 57:1). In other words, Garcia was $2,063,751 short of his 2016 sales quota, and achieved only 17% of his target. (Cunn. Decl. ¶ 13; Ex. A-3; Garcia Dep. at 56:23-25, 57:1). As a result, on January 5, 2017, Cunningham contacted Garcia and terminated his employment. (Garcia Dep. at 154:15-18, 158:15-25).

Garcia's medical benefits were completely covered by workers' compensation. (Garcia Dep. at 197:10-15).

## IV.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56.  "Although the Court must construe all facts in favor of Plaintiff, it is not required to accept as true a statement that no reasonable person would believe."  *White v. Omega Protein Corp.*, 390 F.Supp.2d 604, 609 (S.D. Tex. 2005) (citing *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997)), aff'd 226 Fed. Appx. 360 (5th Cir. 2007). Summary judgment is also warranted where "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."  *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993). "Where the non-movant bears the burden of proof at trial, the movant need only point to the absence of evidence to support an essential element of the non-movant's case; the movant does not have to support its motion with evidence negating the non-movant's case. *Carroll v. Sanderson Farms, Inc.*, 2012 U.S. Dist LEXIS 125792, *6 (S.D. Tex. Sept. 5, 2012) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## V.     ARGUMENT AND AUTHORITIES

### A.     Garcia's disability discrimination claim is without merit and should be dismissed.

Garcia asserts a claim for disability discrimination in violation of the ADA.  For the reasons discussed below, Garcia's discrimination claim fails as a matter of law, and ICE is entitled to summary judgment.

### 1.     The legal standard for disability discrimination claims.

The burdens of proof in an employment discrimination case are well established.  First, the plaintiff must establish a *prima facie* case of discrimination.[1]  *Reeves v. Sanderson Plumbing*

---

[1] Garcia has provided no direct evidence of discrimination. As such, Garcia must prove his disability discrimination claim under the *McDonnell Douglas* burden-shifting framework.

*Prods., Inc.*, 530 U.S. 133, 142 (2000). In a disparate treatment case such as this, a plaintiff makes a *prima facie* showing of disability discrimination by producing probative evidence that: (1) he is disabled under the ADA, (2) he is qualified and able to perform the essential functions of his job, (3) he was subjected to an adverse employment action on account of his disability, and (4) he was treated less favorably than non-disabled employees. *Gowesky v. Singing River Hops. Sys.*, 321 F.3d 503, 511 (5th Cir. 2003); *Herrington v. Univ. of Texas*, 2010 U.S. Dist. LEXIS 124546, at *22-23 (S.D. Tex. Nov. 24, 2010).

If a plaintiff makes a *prima facie* showing, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Gowesky*, 321 F.3d at 511.  The defendant need only articulate such a reason, not prove the reason was true. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S 248, 254-55 (1981). The inference of discrimination created by the *prima facie* case then disappears, leaving the plaintiff to prove "that the legitimate reasons offered by the defendant were not its true reason, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143; *Gowesky*, 321 F.3d at 511.  The plaintiff bears the ultimate burden of proving that the defendant's actions were based on intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).

### 2. Garcia cannot establish a *prima facie* case of disability discrimination.

#### i. Garcia does not have a disability.

In order to meet the first element of his disability discrimination claim, Garcia must show that he was disabled.  A "disability" is defined as either (A) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual—i.e., an actual disability; (B) a record of such an impairment—i.e., a record of disability; or (C) being regarded as having such an impairment—i.e., a regarded-as disability." *Fierro v. Knight Transp.,* No. EP-

12-CV-00218-DCG, 2012 U.S. Dist. LEXIS 133249, at *7 (W.D. Tex. Sep. 18, 2012).

Garcia's Petition alleges that he has a permanent impairment of 12%, but fails to plead facts inferring that his impairment substantially limits a major life activity. *Id.* Instead, Garcia alleges (for the first time during his deposition) that he cannot lift more than ten pounds. (Garcia Dep. at 10:15-24, 145:6-15). Garcia has not produced medical records supporting this allegation.

Regardless, "the relevant time for assessing the existence of a disability is the time of the adverse employment action." *Id.; EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 618 (5th Cir. 2009). At the time of termination, Garcia's TWC reports and medical records show that Dr. Gable cleared Garcia to return to work *without* any weight/lifting restriction. (Ex. C, pages 7-8; Garcia Dep. at 143:1-25). Garcia admits that by January 1, 2017, he traveling, visiting clients, and back at full capacity with no restrictions. (Garcia Dep. at 155:5-23). As a result, Garcia cannot prove that at the time of termination, he was unable to lift more than 10 pounds.

ii.     <u>Even if Garcia could prove he was disabled at the time of termination, he cannot prove that Cunningham had knowledge of his disability.</u>

Garcia must prove that Cunningham, who made the decision to terminate his employment, knew of his alleged disability at the time of termination. *See Toronka v. Cont'l Airlines, Inc.,* No. 10-20540, 411 F. App'x 719, 723 (5th Cir. 2011) (noting that employee must show that employer was sufficiently aware of employee's protected status to have been capable of discriminating based on it). Garcia admits that he did not communicate any details of his injury or surgeries to Cunningham. (Cunn. Decl. ¶ 14; Garcia Dep. at 76:20-25, 85:23-25, 106:3-5, 141:6-8, 149:5-8). Instead, Garcia relies exclusively on the speculation that Cunningham received the TWC status reports. (Garcia Dep. at 125:3-10). Cunningham did not receive the reports. (Cunn. Decl. ¶ 14).

Even if he did, the TWC status reports (as described above) only support Garcia's full release back to work without restriction. (Ex. C, pages 7-8; Garcia Dep. at 124:15-23, 125:5-10, 135:4-14). In fact, by January 1, 2017, Garcia had started traveling to meet with clients again. (Garcia Dep. at 154:25, 155:19-21). As such, Garcia cannot prove that Cunningham knew of any disability at the time of termination.

iii.   <u>Garcia has offered no competent evidence that he was subjected to an adverse employment action on account of his disability.</u>

Even if Garcia properly notified ICE of a substantiated disability, he has no competent evidence that ICE discriminated against him on account of that disability. First, Garcia has no evidence that a discriminatory animus motivated his termination. In fact, he concedes that no one at ICE made negative comments about his injury, and that Kane responded positively and supportively. (Garcia Dep. at 75:15-16, 76:2-3104:24-25, 140:2-21, 149:1-4, 9-12, 159:17-21).

In addition, Garcia describes almost identical situation involving an injury in 2014, after which he did not suffer an adverse employment action. Specifically, in January 2014, Garcia tore his meniscus and had to have knee surgery. (Garcia Dep. 50:3-12). Like in 2016, Garcia could not travel to meet with clients or work on equipment. (Garcia Dep. at 202:1-11). Like in 2016, Garcia spent three months recovering from surgery and attending physical therapy. (Garcia Dep. at 205:20-25, 206:1-11). Unlike 2016, Garcia generated $1,403,980 in revenue. (Exhibit A-1). No discriminatory animus can exist under these circumstances.

Instead, Garcia claims that his termination was "not fair" because the quota increase to $2,500,000 was too high. (Garcia Dep. at 262:7-22). To be clear, ICE set this quota seven months _before_ Garcia's injury that purportedly rendered him disabled, meaning the quota logically could not have been based on a disability that did not exist. (Cunn. Decl. ¶ 12; Garcia Dep. at 262:7-22). Further, all other sales managers received a similar quota. (Cunn. Decl. ¶

12).  But more importantly, Garcia was terminated for his abysmally low performance in general, not simply for failing to meet the quota.  (Cunn. Decl. ¶ 16).  Garcia would have had to *triple* his performance just to meet the 2015 quota.  Regardless, employees are protected from intentional discrimination, not unfair decisions.  *See Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 (5th Cir. 1997).

Last, Garcia identifies Henry Roberts and Omar Pareja as the only individuals who discriminated against him.  (Garcia Dep. at 208:8-11).  Garcia claims that Pareja was assigned to travel with him to meet with Mexico clients that he would eventually adopt after Garcia's inevitable termination.  (Garcia Dep. at 209:21-25, 210:1-12).  Even if true, these alleged events and decisions transpired in "early 2016," months prior to the onset of Garcia's alleged disability.  (Garcia Dep. at 209:1-18).  More so, Pareja, a fellow sales manager, and Roberts, a parts manager, did not supervise Garcia and certainly had no involvement or authority in the decision to terminate his employment.  (Cunn. Decl. ¶ 13; Garcia Dep. at 210:13-17, 24-25).  This renders their alleged animus of no relevance to whether Cunningham was motivated by unlawful animus.  *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 853 (S.D. Tex. 2010) (remarks that are vague, remote in time, unrelated to plaintiff's protected class, or are made by individuals with no authority or influence on the employer's decision, are insufficient to defeat summary judgment).

        iv.    <u>Garcia cannot show that he was treated less favorably than non-disabled employees.</u>

Garcia cannot establish that he was treated less favorably than similarly situated non-disabled employees.  "To establish disparate treatment a plaintiff must show that the employer "gave preferential treatment to [another] employee under 'nearly identical' circumstances"; that is, "'that the misconduct for which [the plaintiff] was discharged was nearly identical to that engaged in by ... [other] employee[s].'"  *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.,* 245 F.3d

507, 514 (5th Cir. 2001) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991); *Smith v. Wal-Mart Stores*, 891 F.2d 1117, 1180 (5th Cir. 1990)).

Garcia is unaware of the other sales managers' disability status, eliminating the possibility that he can identify any non-disabled sales managers at all, and any efforts to do so is pure speculation.  (Garcia Dep. at 211:19-22, 213:4-12).  Even if he could, Garcia cannot point to any facts or evidence that another sales manager generated the same, if not lower revenue than him, and was not terminated as a result.  (Garcia Dep. at 212:1-25, 213:1-12); *see Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012).  Instead, Garcia admits that ICE targeted all sales managers who failed to meet the annual quota, regardless of their disability status. (Garcia Dep. at 211:13-22).

In considering the above, Garcia cannot establish a *prima facie* case of disability discrimination, and ICE is entitled to summary judgment on this claim.

### 3. Even if Garcia could establish a *prima facie* case, he was terminated for a legitimate non-discriminatory reason.

Even assuming, arguendo, that Garcia could establish a *prima facie* case of disability discrimination, ICE can articulate its legitimate, non-discriminatory reason for terminating Garcia's employment.  ICE required Garcia and the other sales managers to meet (or at least strive to meet) their annual quota.  (Cunn. Decl. ¶ 5; Garcia Dep. at 21:11-13).

The summary judgment evidence unequivocally shows that Garcia failed to meet ICE's performance expectations by achieving only 17% of his quota, an abysmally low number. (Cunn. Decl. ¶ 13; Ex. A-3; Garcia Dep. at 56:23-25, 57:1).  By the end of 2016, Garcia was ICE's lowest performing sales manager, period.  (*See* Defendant's Response to the Court's 3.7 Order; Cunn. Decl. ¶ 13).  This wholly deficient performance constitutes a legitimate reason for his termination.  *Salley v. Johnson Controls, Inc.,* No. 00-1343, 2001 U.S. Dist. LEXIS 26979, at

*18 (W.D. La. Nov. 26, 2001) ("insufficient amount of selling activity resulting in unsatisfactory sales production" was a legitimate, nondiscriminatory reason for termination of a salesperson, and where no discriminatory animus has been demonstrated, the court will not "second guess" such employment decisions); *see Dees v. United Rentals North America, Inc.*, 505 F. App'x 302, 304 (5th Cir. 2013) (unsatisfactory work performance was legitimate, non-discriminatory reason for terminating the plaintiff).

### 4.   Garcia cannot show his performance issues were a pretextual reason for his termination.

To avoid summary judgment, Garcia "must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of [ICE's] decision." *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Moore v. Reeves County*, 360 F. App'x 546, 548 (5th Cir. Jan. 11, 2010) (quotations omitted); *see Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999).  The plaintiff may establish pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Here, Garcia presents no evidence to raise a genuine issue of material fact that ICE's reason for his discharge are pretextual or that Garcia's injury was a motivating factor in his discharge.

### B.   Garcia failed to exhaust administrative remedies because his lawsuit is distinct from his charge of discrimination.

Employees must exhaust administrative remedies before filing suit.  On October 19, 2017, Garcia filed a Charge of Discrimination asserting a *failure to accommodate* claim.  (Ex. D).  Specifically, Garcia asserts that, after his injury, his "sales were down" during the month he

attended physical therapy and that he "was not able fully function on the job due to [his] disability." (Ex. D).

In his Petition, Garcia claims he was able to perform the essential functions of his position, but was subjected to a negative job action based on his disability. (Plaintiff's Original Petition, ¶ 23). Garcia claims that his injury and recovery did not affect his ability to perform in his role, and that as a result, his "sales increased while he was recovering from his injury." (Plaintiff's Original Petition, ¶ 20, 24; Garcia Dep. at 11:12-25, 12:1-3, 22-25, 13:1-2, 28:21-23, 87:9-21). Garcia's *failure to accommodate* Charge completely contradicts his lawsuit, which unarguably asserts a *disparate treatment claim*. (Plaintiff's Original Petition, ¶ 23).

Garcia cannot rely on his Charge to meet the administrative exhaustion obligation for his disparate treatment claim. Failure to accommodate claims are distinct from disparate treatment claims and must be specifically and timely alleged in order to exhaust administrative remedies. *See Capozzelli v. All-State Ins. Co.,* Civ. Action No. 2:13-CV-00260-JRG, 2014 U.S. Dist. LEXIS 23270, at *11-13 (E.D. Tex. Feb. 24, 2014). Since additional charges of discrimination are now time-barred, Garcia has failed to exhaust administrative remedies.

**C.    The Individual Defendants should be dismissed because they are not "employers" under the ADA.**

Defendants T. Richard Morris, Thomas P. Cunningham, Christian P. Cunningham ("Individual Defendants") should be dismissed because they are not "employers" as defined by the ADA. The ADA only provides for employer liability, and the courts have routinely disallowed liability against individuals. *McLennan v. Oncor Elec. Delivery Co. LLC*, Civil Action No. 3:12-CV-00531-G (BF), 2012 U.S. Dist. LEXIS 105858, at *9 (N.D. Tex. 2012).

## VI.    CONCLUSION AND PRAYER FOR RELIEF

Based on the foregoing, ICE respectfully requests that the Court grant its Motion for Summary Judgment, that Garcia's claims be dismissed with prejudice, and that ICE be granted all additional relief to which it is entitled.

Respectfully submitted,

 */s/ William J. Stukenberg*
William R. Stukenberg
Texas Bar No. 24051397
S.D. Texas Bar No. 55792
Wedge International Tower
1415 Louisiana, Suite 3325
Houston, Texas 77002
Telephone:    (713) 650-0404
Facsimile:    (713) 650-0405
Email:william.stukenberg@jacksonlewis.com

Mehronissa Modgil
(Application for Admission to be submitted)
Texas State Bar No. 24092846
Mehronissa.modgil@jacksonlewis.com
JACKSON LEWIS P.C.
500 N. Akard, Suite 2500
Dallas, Texas  75201
Telephone:  (214) 520-2400
Fax:  (214) 520-2008

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been forwarded to all counsel of record by electronic filing, on the 22nd day of April, 2019, as follows:

R. Scott Poerschke, Jr.
Chris J. Ainsworth
THE POERSCHKE LAW FIRM, PC
5111 Center Street
Houston, Texas 77007
EM:  scott@rsplegal.com
EM:  ainsworth@rsplegal.com


/s/ Mehronissa Modgil
Mehronissa Modgil


4812-2509-9154, v. 2